**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| KIMBERLY M. GODWIN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL ACTION NO. 16-00041-B |
| | * | |
| CORIZON HEALTH, | * | |
| | * | |
| Defendant. | * | |

<u>ORDER</u>

This action is before the Court on Defendant Corizon LLC's Motion for Summary Judgment (Doc. 22) and Plaintiff's response in opposition (Doc. 28, 29). Upon careful review of the motion, briefs, supporting materials and the applicable case law, the Court concludes that no material facts are in controversy and that Defendant is entitled to judgment as a matter of law. Accordingly, the Court grants Defendant's Motion for Summary Judgment.

**I.   Background**

The evidence submitted by the parties shows that Defendant Corizon LLC ("Corizon") has a contract with the Alabama Department of Corrections ("ADOC") to provide health care related services to inmates incarcerated within Alabama state correctional facilities. (Doc. 22-2 at 23). Plaintiff Kimberly M. Godwin (hereinafter "Plaintiff" or "Godwin") worked as a nurse for Corizon at various correctional facilities from

approximately September 2009 to April 29, 2014.  (Doc. 22-2 at 4, 6; Doc. 28-1 at 5-7).

In November 2011, Plaintiff was terminated by Corizon on the ground that she had not worked for the company in over ninety days.  (Doc. 28-1 at 6).  In 2012, Plaintiff filed an EEOC charge alleging discrimination based on her age and race (Caucasian).  The charge ultimately resulted in a negotiated settlement whereby Plaintiff was reinstated by Corizon on May 14, 2012 to work at Fountain Correctional facility.  (Doc. 22-2 at 5, 7, 17, 19).

From December 2013 through early February 2014, Godwin sought and was approved for intermittent leave under the Family Medical Leave Act ("FMLA") as a result of her contracting the flu and then pneumonia.  (Doc. 22-2 at 8, 26-27).  Beginning February 6, 2014 through April 28, 2014, Godwin was away from work on FMLA leave.[1]  (Doc. 22-2 at 26-27).

Prior to Godwin taking her FMLA leave in February 2014, Darrell LeGrand ("LeGrand"), an inmate at Fountain, completed a sick call request form on January 27, 2014, in which he asked to see a doctor and get his medication prescription renewed.  (Doc. 22-2 at 9-10, 31-32, 43, 53).  Corizon policy requires that,

_____

[1] Plaintiff's leave was originally scheduled to end on March 27, 2014, but was extended at Plaintiff's request to April 28, 2014. (Doc. 22-2 at 26-27).

when an inmate fills out a sick call request form and requests to see a physician, the on-call nurse must assess the inmate (including taking the inmate's vital signs) prior to the inmate being seen by a physician. (Doc. 22-2 at 25, 47, 53-54). Corizon policy further requires that, when performing a physical on an inmate in response to a sick call request, the nurse must remove the inmate from his cell and take him to a screening room or other designated area for the physical examination. (Doc. 22-2 at 37, 47, 53, 58). Corizon policy prohibits a nurse from obtaining an inmate's vital signs at the cell or through the prison cell door for reasons of privacy and security. (Doc. 22-2 at 34, 37, 47-48, 53, 58). Corizon policy, and Fountain prison regulations, also require that an ADOC officer accompany any nurse who enters the segregation unit to remove an inmate from his cell in order to perform a medical assessment of that inmate. (Doc. 22-2 at 25, 48, 53).

On January 28, 2014, inmate LeGrand submitted a written medical grievance to Corizon stating that, on January 27, 2014, nothing had been done in response to his sick call request. Inmate LeGrand stated: "Nurse Goodin (sic) was working 3-11 shift and claim she did an assessment on me. I'm stating that

Nurse Godwin never did any assessment on me. I was never asked [nor] was I taken out of my cell."[2] (Doc. 22-2 at 31, 65, 67).

Upon receiving LeGrand's medical grievance, Corizon began an investigation into the incident. (Doc. 22-2 at 32, 54, 67). The investigation was led by Director of Nursing Kevin Baugh and Health Services Administrator Katherine Gibson.[3] (Doc. 22-2 at 23, 26, 54). In her capacity as Health Services Administrator, Gibson was the highest ranking Corizon employee at Fountain. She oversaw the entire healthcare unit at Fountain, including the nursing and day-to-day operations of the Fountain healthcare facilities. (Doc. 22-2 at 23-24). Kevin Baugh was the Director of Nursing at Fountain from August 2013 until approximately August 2014. (Doc. 22-2 at 52). As Director of Nursing, all of the nursing staff at Fountain reported to him. (Id.).

Corizon began its investigation into inmate LeGrand's

---

[2] While inmate LeGrand had never filed a grievance against Plaintiff or any other Corizon employee before this grievance, Plaintiff contends that LeGrand was angry with her because she had declined to serve as a witness for him at an earlier disciplinary proceeding. According to Plaintiff, the alleged violation for which LeGrand was being disciplined had not occurred during her shift and, thus, she declined to serve as a witness. (Doc. 22-2 at 9, 32).

[3] Plaintiff identifies Katherine Gibson and Kevin Baugh as Caucasian. (Doc. 1 at 3).

medical grievance by pulling the sick call log,[4] LeGrand's medical chart, and the nursing encounter tool for LeGrand, which was dated January 27, 2014, and signed by Godwin. (Doc. 22-2 at 32-33, 36). Corizon also pulled the ADOC logs for January 27, 2014, which did not reflect that a sick call was made. (Doc. 22-2 at 36). The ADOC logs showed that ADOC Correctional Officer Larry Brooks was on duty during the same time period, and therefore would have been the officer assigned to accompany Godwin had she gone into the segregation unit to take LeGrand's vital signs. (Doc. 22-2 at 36, 55-56, 61-62). It is undisputed that whenever a nurse has to go into the segregation unit, the nurse must be accompanied by an ADOC officer. (Doc. 22-2 at 10).

Gibson discussed the matter with the warden at Fountain. Thereafter, the warden gave Gibson a statement from Officer Brooks, who confirmed that he was on duty on January 27, 2014, that he had accompanied Godwin on her rounds in the segregation unit on that day, and that Godwin did not perform any type of medical assessment on inmate LeGrand. (Doc. 22-2 at 56, 61-62).

_____

[4] A sick call request is a way for inmates to report medical issues to the staff, such as the need for a prescription refill. (Doc. 22-2 at 25). After the inmate completes a handwritten form, he is seen by nursing staff if indicated. (Id.). If the inmate is in the segregation unit, the nurse must be accompanied by a correctional officer. (Id.).

Thereafter, Director of Nursing Baugh interviewed Officer Brooks directly. He again confirmed that Godwin did not take inmate LeGrand's vital signs and did not perform any kind of medical or physical assessment on LeGrand either at cell door or in the screening room per Corizon policy.[5] (Doc. 22-2 at 55-56, 61-62).

Corizon also reviewed the security camera footage for the lobby in the segregation unit for January 27, 2014. It revealed that inmate LeGrand was not removed from his cell by Godwin in order to take his vital signs, as required by Corizon's policies governing medical assessments on inmates. (Doc. 22-2 at 34-35, 37, 47, 54-55, 58). According to Plaintiff, Officer Canon, not Officer Brooks, accompanied her to the segregation unit on January 27, 2014, while she performed the medical assessment on inmate LeGrand through the cell door. (Doc. 22-2 at 10-11). Per Plaintiff, she did not remove inmate LeGrand from his cell or take him to the screening room or any other designated assessment area. Instead, she completed the entire medical assessment (including taking his oxygen saturation rate, blood pressure, and temperature) through the door of the inmate's cell as he stuck his arm out of the cell. (Doc. 22-2 at 10).

---

[5] According to Officer Brooks, Plaintiff never asked for inmate LeGrand to be removed from his cell and did not assess any vital signs whatsoever. (Doc. 22-2 at 62).

As a result of its investigation, Corizon concluded that Godwin had failed to perform a medical assessment of inmate LeGrand and had fraudulently completed LeGrand's medical chart to cover up that fact. (Doc. 22-2 at 30-31, 58, 69). On February 21, 2014, Health Services Administrator Gibson and Director of Nursing Baugh recommended to Corizon's corporate office that Godwin be terminated. (Doc. 22-2 at 69).

On March 10, 2014, Plaintiff filed an EEOC charge alleging that she had been discriminated against by two Corizon nurse supervisors who were African American.[6] (Doc. 22-2 at 71). Specifically, Plaintiff alleged that one of the African American supervisors yelled at her, and two African American co-workers

---

[6] Plaintiff contends that prior to her medical leave, she complained to Corizon management regarding unfair treatment due to her race. According to Plaintiff, she complained that an African American supervisor had yelled at her, and that another African American supervisor discriminated against her with respect to patient assignments. (Doc. 28-1 at 14, 18-20; Doc. 29 at 11; Doc. 22-2 at 28, 71). The record further reflects that Plaintiff had a number of conflicts with co-employees (not Gibson and Baugh), including accusations by co-employees that Plaintiff had a gun in her car and had chased one of them in the parking lot with her car, as well as three separate instances of Plaintiff filing criminal charges against co-employees. (Doc. 29 at 3-8; Doc. 22-2 at 13). However, none of those individuals is alleged to have been involved in the allegedly retaliatory decision to terminate her employment. Rather, Plaintiff alleges that Gibson and Baugh recommended her termination, and "[s]omeone up the corporate chain approved the termination based on Gibson and Baugh's recommendation." (Doc. 29 at 10).

physically assaulted her; yet, Corizon failed to take any action. (Id.) She further asserted that the other African American supervisor assigned her more patients than her African American co-workers because of her race. (Id.)

At the recommendation of Health Services Administrator Gibson and Director of Nursing Baugh, and upon approval from Corizon Human Resources, Plaintiff was terminated on April 29, 2014, the day she returned from her FMLA leave.[7] (Doc. 22-2 at 4, 30-31, 40, 69). On October 17, 2014, Plaintiff filed another EEOC charge alleging that she had been terminated for filing previous EEOC charges and because she was disabled. (Doc. 22-2 at 71, 74). On or about November 2, 2015, the EEOC issued its Notice of Dismissal of this EEOC charge. (Doc. 22-2 at 76).

On January 27, 2016, Plaintiff filed the instant complaint against Corizon. In her complaint, Plaintiff alleges retaliation under the FMLA, Title VII, and 42 U.S.C. § 1981 (hereinafter "§ 1981"). (Doc. 1 at 3). According to Plaintiff, Defendant retaliated against her for participating "in protected activity, i.e., filing previous EEOC charges and taking FMLA leave." (Id.)

_____

[7] Pursuant to Corizon policy, if a decision was made to terminate an employee while that employee was on FMLA leave, the termination would not occur until the employee returned to work. (Doc. 22-2 at 79).

8

## II.  Summary Judgment Standard

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P.  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact.  Id.  If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. . . . Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotation marks omitted).  "Summary judgment is justified only for those cases devoid of any need for factual determinations." Offshore

<u>Aviation v. Transcon Lines, Inc.</u>, 831 F.2d 1013, 1016 (11th Cir.

1987) (citation and internal quotation marks omitted).

**III. Analysis**

Defendant has filed a motion for summary judgment on

Plaintiff's FMLA and Title VII/§ 1981 retaliation claims based

on Plaintiff's failure, as a matter of law, to establish the

prima facie elements of these claims, or, assuming a prima facie

case, Plaintiff's failure to establish the essential element of

pretext. (Doc. 22). For the reasons set forth below,

Defendant's motion for summary judgment is **GRANTED.**

**A.    Plaintiff's FMLA Retaliation Claim**

When a plaintiff asserts a claim of retaliation under the

FMLA, in the absence of direct evidence of the employer's

intent, the Court applies the same burden-shifting framework

established by the Supreme Court in <u>McDonnell Douglas Corp. v.</u>

<u>Green</u>, 411 U.S. 792 (1973), for evaluating Title VII

discrimination claims. <u>Feise v. North Broward Hosp. Dist.</u>, 2017

U.S. App. LEXIS 5222, *9, 2017 WL 1101402, *3 (11th Cir. Mar.

24, 2017) (quoting <u>Strickland v. Water Works & Sewer Bd. of City</u>

<u>of Birmingham</u>, 239 F.3d 1199, 1207 (11th Cir. 2001)). "To prove

a retaliation claim, an employee 'must allege that: (1) [s]he

engaged in a statutorily protected activity; (2) [s]he suffered

an adverse employment decision; and (3) the decision was

causally related to the protected activity." <u>Id.</u> "Only after

the plaintiff makes this prima facie case of discriminatory retaliation does the burden shift to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." Id. (quoting Drago v. Jenne, 453 F.3d 1301, 1307 (11th Cir. 2006)). "If the defendant does so, the plaintiff must then show that the defendant's proffered reason for the adverse action is pretextual." Id. (quoting Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1297 (11th Cir. 2006)).

With respect to Plaintiff's initial burden, Defendant concedes that Plaintiff meets the first two elements of her prima facie case but argues that Plaintiff cannot establish causation. Defendant invites the Court to require Plaintiff to prove causation using the heightened "but-for" standard instead of the traditional "motivating factor" causation standard currently applicable to FMLA retaliation cases in the Eleventh Circuit. The Court declines Defendant's invitation.

As discussed by the court in Corbin v. Medical Ctr., Navicent Health, 2016 U.S. Dist. LEXIS 134159, *30, 2016 WL 5724992, *10 (M.D. Ga. Sept. 29, 2016), the "current state of the law in this Circuit only requires Plaintiff to prove her use of FMLA leave was a motivating factor in her termination." Id. (citing Coleman v. Redmond Park Hosp., LLC, 589 F. Appx. 436, 439 (11th Cir. 2014) (unpublished). Stated differently, "to

establish a prima facie case of FMLA retaliation, Plaintiff must show her use of FMLA leave and her termination were not 'wholly unrelated.'" Corbin, 2016 U.S. Dist. LEXIS 134159 at *30, 2016 WL 5724992 at *11 (citations omitted); see also Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999)("[t]o prove a causal connection [for retaliation under Title VII], we require a plaintiff only to demonstrate that the protected activity and the adverse action were not wholly unrelated.").

A plaintiff can meet this burden by showing that "the decision maker was aware of the protected conduct at the time of the adverse employment action." Corbin, 2016 U.S. Dist. LEXIS 134159 at *30, 2016 WL 5724992 at *10. "Close temporal proximity between protected conduct and an adverse employment is generally 'sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.'" Id.; see also Darring v. DailyAccess Corp., 2006 U.S. Dist. LEXIS 17326, *30, 2006 WL 779868, *11 (S.D. Ala. Mar. 27, 2006) (If a plaintiff provides "sufficient evidence that the decision maker became aware of the protected conduct and that there was close temporal proximity between this awareness and the adverse employment action," she can prove the causal connection).

In the present case, there is no dispute that Plaintiff was terminated on the day that she returned from taking FMLA leave.

Plaintiff argues that the close temporal proximity of the statutorily protected activity and the adverse action satisfy her prima facie case of retaliation. (Doc. 29 at 17-18). The Court agrees. Based on the close temporal proximity of her returning from taking FMLA leave and her termination, *i.e.*, the same day, Plaintiff has established a prima facie claim for FMLA retaliation.

To rebut Plaintiff's prima facie case, Defendant must only meet the "exceedingly light" burden of presenting a legitimate and nondiscriminatory reason for its employment action. <u>Darring</u>, 2006 U.S. Dist. LEXIS 17326 at *30-31, 2006 WL 779868 at *11) (quoting <u>Perryman v. Johnson Products, Inc.</u>, 698 F.2d 1138, 1142 (11th Cir. 1983)). In satisfying this burden, Corizon points to evidence that Plaintiff was terminated after an internal investigation into an inmate grievance revealed that Plaintiff had violated company policy by not conducting a required sick call examination and then falsifying medical records to cover it up.[8] (Doc. 22-2 at 30-31, 34-35, 37, 39-40, 53-54, 58, 61-62, 67, 69; Doc. 28-2 at 83).

---

[8] Corizon's policy provided that an employee may be recommended for immediate termination due to serious misconduct such as the falsification of patient medical records. (Doc. 22-2 at 40, 69). According to Corizon, Plaintiff was fired for violating this policy. (<u>Id.</u>).

The question, then, is whether Plaintiff has put forward sufficient evidence indicating that Defendant's putative reason for termination was mere pretext for its true intention to fire her for having taken FMLA leave.  The Court concludes that she has not.

In establishing pretext, absent direct evidence of retaliation, a plaintiff must present circumstantial evidence sufficient for a reasonable jury to find that the employer's proffered reason for terminating the plaintiff was mere pretext for discrimination.  Feise, 2017 U.S. App. LEXIS 5222 at *9, 2017 WL 1101402 at *3.  To that end, "a plaintiff must adduce evidence not only that the employer's proffered reason is false, but also that unlawful retaliation was the employer's true motive."  Id. (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 514-15 (1993)).  Stated differently, Plaintiff must show either that Defendant's proffered reason "is unworthy of credence" or that retaliation "more than likely motivated [Defendant] to fire [her]."  Id. (quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)).  Having reviewed the record at length, the Court finds that the evidence proffered by Plaintiff would not permit a reasonable jury to find that Defendant's reason for terminating her was unworthy of credence, or that retaliation more likely than not motivated Defendant to terminate her.  Thus, Plaintiff's claim fails.

As previously stated, Plaintiff relies on temporal proximity to establish pretext in this case. However, "temporal proximity alone generally is insufficient to establish pretext." Id. (citing Hurlbert, 439 F.3d at 1298). Moreover, it is undisputed in this case that Corizon had a policy that, if it made a decision to terminate an employee while that employee was on FMLA leave, the termination would not occur until the employee returned to work. (Doc. 22-2 at 79). That is precisely what happened here. Therefore, under the circumstances of this case, temporal proximity, alone, does not establish pretext.

While Plaintiff contends that she did not violate Corizon's policies by failing to conduct a required inmate medical assessment; that she was accompanied by Officer Canon (not Officer Brooks) to inmate LeGrand's cell to conduct the assessment; that she did perform a medical assessment on inmate LeGrand at his cell;[9] and that she did not falsify LeGrand's medical records, these assertions are not sufficient to create a jury question. (Doc. 29 at 19; Doc. 22-2 at 11; Doc. 28-2 at 83).

---

[9] It is undisputed that it was also against Corizon policy to conduct an inmate medical assessment at the cell. (Doc. 22-2 at 34, 37, 47, 58).

It is undisputed that Director of Nursing Baugh and Health Services Administrator Gibson conducted a lengthy, in depth investigation into inmate LeGrand's grievance and ultimately concluded that Plaintiff did not conduct the inmate's medical assessment as Plaintiff claimed and that Plaintiff falsified the inmate's medical records to cover up her failure. (Doc. 22-2 at 30-31, 34-35, 37, 39-40, 53-54, 58, 61-62, 64, 69; Doc. 28-2 at 83). Therefore, "[t]his case . . . fits comfortably in the line of cases indicating that '[t]he inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." Feise, 2017 U.S. App. LEXIS 5222, *16, 2017 WL 1101402 at *6 (quoting Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1266 (11th Cir. 2010)). "Indeed, an employer can hardly be said to have discriminated or retaliated against an employee if it terminated the employee based on a good faith belief that she violated a rule, even if the purported violation never actually occurred." Id. Therefore, "[a]bsent evidence of discrimination or retaliation, our employment discrimination statutes do not interfere with an employer's ability to manage its personnel, '[n]o matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers." Id. (citing Elrod, 939 F.2d at 1470). Indeed, "[i]t matters not

that [a plaintiff's] termination might have been unexpected or unfair; FMLA simply does not afford relief in the absence of evidence of retaliation." Id.

Based on the foregoing, Plaintiff has failed to present evidence that would allow a reasonable jury to find that Corizon's decision to terminate her, which was consistent with Corizon's written policy that falsification of medical records constituted grounds for immediate termination (Doc. 22-2 at 30-31, 34-35, 37, 39-40, 53-54, 58, 61-62, 69), was merely pretext. Therefore, Plaintiff's FMLA retaliation claim fails as a matter of law.

**B.   Plaintiff's Title VII/§ 1981 Retaliation Claims**

For the same reasons discussed above in relation to Plaintiff's FMLA retaliation claim, the Court finds that Corizon is entitled to summary judgment on Plaintiff's Title VII/§ 1981 retaliation claims.  The legal standard applicable to Title VII, § 1981, and FMLA retaliation claims is identical and requires that a plaintiff make a showing of circumstantial evidence that satisfies the test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Johnson v. Mobile Infirmary Med. Ctr., 2015 U.S. Dist. LEXIS 44990, *26-27, 2015 WL 1538774, *7 n.12 (S.D. Ala. Apr. 7, 2015).  As this Court discussed in Johnson when addressing Plaintiff's Title VII, 42 U.S.C. § 1981, and FMLA retaliation claims:

> Under this familiar [McDonnell Douglas]
> burden-shifting analysis, plaintiff is
> required to make out a prima facie case of
> unlawful discrimination or retaliation. If
> she does so, that showing "creates a
> rebuttable presumption that the employer
> acted illegally." Underwood v. Perry County
> Comm'n, 431 F.3d 788, 794 (11th Cir. 2005).
> At that point, "the burden shifts to the
> employer to articulate some legitimate,
> nondiscriminatory reason for the adverse
> employment action.... If the employer does
> this, the burden shifts back to the
> plaintiff to show that the employer's stated
> reason was a pretext for discrimination."
> Crawford v. Carroll, 529 F.3d 961, 976 (11th
> Cir. 2008) (citations and internal quotation
> marks omitted); see also Holifield v. Reno,
> 115 F.3d 1555, 1566 (11th Cir. 1997)
> (outlining similar procedure for Title VII
> retaliation claims). A plaintiff may
> establish pretext "either directly by
> persuading the court that a discriminatory
> reason more likely motivated the employer or
> indirectly by showing that the employer's
> proffered explanation is unworthy of
> credence." Brooks v. County Comm'n of
> Jefferson County, Ala., 446 F.3d 1160, 1163
> (11th Cir. 2006) (quotation omitted). "The
> ultimate burden of persuading the trier of
> fact that the defendant intentionally
> discriminated against the plaintiff remains
> at all times with the plaintiff." Springer
> v. Convergys Customer Management Group Inc.,
> 509 F.3d 1344, 1347 (11th Cir. 2007).

Johnson, 2015 U.S. Dist. LEXIS 44990 at *26-27, 2015 WL 1538774 at *7.

In this case, the only additional facts alleged with respect to Plaintiff's Title VII and § 1981 claims are that Corizon retaliated against her for filing previous EEOC charges, namely, one charge filed in 2012 and a second charge filed on

March 10, 2014.[10]   (Doc. 22-2 at 17, 71).   However, it is undisputed that Corizon made the decision to terminate Plaintiff on February 21, 2014, before she filed her EEOC charge on March 10, 2014.   (Doc. 22-2 at 69, 71).   Thus, Corizon's decision could not have been based on the March 10, 2014, EEOC charge. Cf., Smith v. City of Fort Pierce, Fla., 565 F. Appx. 774, 779 (11th Cir. 2014) ("Smith cannot establish causation because Recor had already contemplated disciplining Smith before she filed her Charge.").

Likewise, reference to the earlier 2012 EEOC charge is unavailing as it is too remote in time to establish a causal connection between the decision to terminate Plaintiff in February 2014 and the 2012 EEOC charge.   Cf., Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (collecting cases and holding that "[a] three to four month disparity between the statutorily protected expression and the adverse

---

[10] Although Plaintiff also alleges that she complained to Corizon management regarding alleged discrimination against her by two African American supervisors, she has nevertheless failed to offer facts to suggest that the decision to terminate her was pretextual.   As noted *supra*, while Plaintiff may quarrel with the reasonableness of the decision to terminate her, the pretext inquiry focuses on the employer's beliefs.   Because Plaintiff has not proffered any evidence suggesting that Corizon did not have a good faith belief that Plaintiff had violated its policies, her claim must fail.

employment action is not enough" to infer causation based on temporal proximity for the purpose of establishing a prima facie case of retaliation).    "[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law."  Thomas, 506 F.3d at 1364.    Therefore, Plaintiff's Title VII/§ 1981 retaliation claims fail as a matter of law for failure to present evidence from which a reasonable jury could find any causal connection between her EEOC charges and her termination of employment.

Moreover, assuming, *arguendo*, that Plaintiff could establish a prima facie case based on these additional facts, her Title VII/§ 1981 retaliation claims still ultimately fail as a matter of law for lack of evidence that would allow a reasonable jury to find that Corizon's proffered reason for terminating her (falsification of medical records in violation of company policy) (Doc. 22-2 at 30, 34-35, 37, 39-40, 53-54, 58, 61-62, 67, 69), was merely pretext.  Therefore, for the same reasons discussed in detail above and based on the same authorities, Corizon is entitled to summary judgment on Plaintiff's Title VII/§ 1981 retaliation claims for this reason as well.

Accordingly, based on the foregoing, Defendant Corizon's motion for summary judgment is **GRANTED,** and Plaintiff's complaint is dismissed in its entirety.

**DONE** this **10th** day of **April, 2017.**

                                    **/S/ SONJA F. BIVINS**
                            **UNITED STATES MAGISTRATE JUDGE**